UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HENRY RUPPEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. : 3:12-cv-00293-GPM-SCW |
| | ) |
| CBS CORPORATION, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT WARREN PUMPS, LLC'S MOTION TO STRIKE THE AFFIDAVIT OF HENRY RUPPEL IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT WARREN PUMPS, LLC'S MOTION FOR SUMMARY JUDGMENT**

Now comes defendant, Warren Pumps, LLC (hereinafter "Warren") by and through its attorney, Heyl Royster, Voelker, and Allen, and files its Motion to Strike the Affidavit of Henry Ruppel in Support of Plaintiff's Opposition to Defendant Warren Pumps, LLC's Motion for Summary Judgment. Warren moves to strike the affidavit pursuant to the Federal Rules of Civil Procedure, Federal case law, and the United States District Court Southern District of Illinois Local Rules. This motion is brought on the grounds that said Affidavit contradicts prior discovery and evidence deposition testimony, brings to light new testimony for the first time and was filed untimely.

### I. PROCEDURAL HISTORY

The discovery deposition of Mr. Henry Ruppel was taken on July 18 and 19, 2012. Thereafter, the evidence deposition of Mr. Ruppel took place on July 26, 2012. Plaintiff's counsel stipulated that Mr. Ruppel would not identify Warren at these depositions. During these depositions, Mr. Ruppel repeatedly testified that although he recalled pumps being installed and

maintained at the A1W facility, he did not recall any details of the maintenance, and failed to testify that any maintenance would have disturbed any asbestos-containing components of **any** pump. After removal to federal court all discovery pertaining to Warren was limited to Plaintiff's work at the Atomic Energy Commissions A1W nuclear propulsion project in Idaho Falls, Idaho. (Discovery Dispute Conference, July 31, 2013 74:24-25, 75:1-2 attached hereto as Exhibit A).

Despite his claim that there was no further need to depose Mr. Ruppel in federal court, Plaintiff's counsel has repeatedly scrambled to bolster Mr. Ruppel's deposition testimony in this case. See, Doc. 138-1 No. 2. On May 21, 2013, in opposition to defendant Cleaver-Brooks Inc.'s motion for summary judgment, Plaintiff attached an affidavit that claimed for the very first time that Mr. Ruppel worked around distilling plants while they were being maintained. See, Doc. 263-4. This court rightly granted Cleaver-Brooks, Inc.'s motion to strike Plaintiff's affidavit. Doc. 384-3, 28:5-8.

Next, Plaintiff supplemented his answers to interrogatories on August 19, 2013, just before the close of discovery. In his supplemental answers, Plaintiff listed specific equipment that Mr. Ruppel claimed to have worked with or around at the A1W facility and *USS Enterprise*, equipment that Mr. Ruppel did not testify to working around during his depositions.[1] These supplemental answers were served just before defendants' 30(b)(6) depositions were to commence, and Plaintiff attempted to use them to broaden the scope of the deposition. This court denied Plaintiff's request to expand the scope of these depositions. (Doc. 357).

Finally, after discovery closed, in a last-ditch effort to create evidence to create issues of material fact, Plaintiff's counsel attempted to take another deposition of Mr. Ruppel. This court

---

[1] Without waiving its objections to the admissibility of the supplemental answers to interrogatories, Warren notes that these supplemental answers did not state that Mr. Ruppel witnessed any work on centrifugal pumps, which the affidavit at the heart of the current dispute does.

denied this request, finding that Plaintiff's request was "untimely as discovery closed on August 30, 2013, and highly prejudicial to Defendants." (Document No. 378).

This history sets the stage for the current motion. On September 20, 2013, Warren filed its motion for summary judgment in this case. Doc. 404. On November 27, 2013, Plaintiff filed his opposition to Warren's motion for summary judgment. Doc. 445. Attached to Plaintiff's opposition to Warren Pumps' Motion for Summary Judgment is an exhibit representing a newly-executed affidavit from the Plaintiff. Doc. 445-6. This affidavit signed on October 23, 2013 but was not revealed to Warren until November 27. The affidavit offers "new evidence" that contradicts Mr. Ruppel's prior deposition testimony, just as Plaintiff's prior affidavit did in the effort to oppose Cleaver-Brooks, Inc.'s motion for summary judgment. Mr. Ruppel states in the affidavit for the first time that he saw employees removing packing and gaskets from centrifugal pumps. Just as the Court struck Plaintiff's affidavit directed to Cleaver-Brooks, the Court should strike this affidavit, as it contradicts Mr. Ruppel's prior testimony, and was untimely filed.

## II. **ARGUMENT**
### a. **PLAINTIFF'S DEPOSITIONS AND AFFIDAVIT ARE IN CONFLICT AND THE AFFIDAVIT SHOULD BE STRICKEN FROM THE RECORD**

The law is clear and settled in this District Circuit Court as well as the 7th Circuit regarding depositions and affidavits that are in conflict. In fact, this Court held: "Where deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken." *Hunt v. DaVita, Inc.*, 2011 WL 2532845 at *4 (S.D. Illinois, June 24, 2011) (*quoting Russell v. Acme-Evans Co.*, 51 F.3d 67, 68 (7th Cir. 1995)). This action is warranted because affidavits "when offered to contradict the affiant's deposition are so lacking in credibility as to be entitled to zero weight in summary judgment proceedings unless

the affiant gives a plausible explanation for the discrepancy." *See id.* at *4 (*quoting Beckel v. Wal-Mart Assocs. Inc.*, 301 F.3d at 623 (7th Cir. 2002)). "Moreover, this explanation must be offered in the affidavit itself." *See id.* at *4; *See e.g. Babrocky v. Jewel Food Co.*, 773 F.2d 861, 862 (7th Cir. 1985) (emphasis added). "The plaintiff's failure to disclose her statements during her deposition or pretrial discovery was seen as an "omission" of a significant statement, amounting to a 'new' assertion; both the district court and the Seventh Circuit agreed that the statements in plaintiff's affidavit should not be considered when ruling on the summary judgment motion as it would effectively allow 'directly conflicting testimony' into evidence." *Scarbrough v. Illinois Department of Human Services*, No. 07-CV-42-DRH, 2008 WL 4066090 at *6 (S.D. Illinois, August 27, 2008) (*quoting Gates v. Caterpillar, Inc.*, 513 F.3d 680, 687-88 (7th Cir. 2008))(emphasis added). "The very purpose of the summary judgment motion is to weed out unfounded claims, specious denials, and sham defenses." *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1167, 68 (7th Cir. 1996) (*quoting Babrocky v. Jewel Food Co.*, 773 F.2d at 861). "As a general rule, the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony." *Buckner v. Sam's Club, Inc.*, 75 F.3d at 293 (7th Cir. 1996) (*quoting Russell v. Acme-Evans Co.*, 51 F.3d 64, 67-68 (7th Cir. 1995)). "It is less obvious when…the 'new' statement adds to, without directly contradicting, prior testimony although the prior testimony is perfectly clear. 'The concern in litigation, of course, is that a party will first admit no knowledge of a fact but will later come up with a specific recollection 'that would override the earlier admission." *Buckner* at 293. (district court did not abuse its discretion in disallowing very specific description in affidavit after plaintiff's previous

T2529

deposition offered merely general commentary on its physical nature when that specifically was necessary to establish causal link.)

The affidavit offered by Plaintiffs in their opposition to Warren Pumps' Motion for Summary Judgment directly contradicts the testimony of the Plaintiff. Mr. Ruppel's new affidavit claims that he was not asked whether he worked around any centrifugal pumps at the A1W facility or whether he saw any repairs performed on such pumps. In his affidavit, Mr. Ruppel claims that if he were asked about centrifugal pumps at the facility, he would have testified that he was present for the installation, maintenance, and repair of centrifugal pumps, and that he was present when others removed gaskets and packing from such pumps. See Doc. 445-6.

However, Mr. Ruppel's affidavit is contradicted by his testimony. Mr. Ruppel was specifically asked about any work he recalled on centrifugal pumps at the A1W facility, and he failed to testify that he witnessed any gasket or packing work performed on these pumps. During his evidentiary deposition, Mr. Ruppel testified that he recalled working around centrifugal pumps at the A1W facility during his own counsel's direct examination. Trial Preservation Deposition of Henry Ruppel, July 26, 2012, 54:15-23, 55:1-6 attached hereto as Exhibit B. When asked by his own counsel what work he recalled on these very centrifugal pumps, he failed to testify that he recalled any work on gaskets and packing related to these pumps:

```
                            54
14  BY MR. NIDEFFER:
15      Q.  Work on pumps that you saw, what work was
16  being done to the pumps?
17      A.  Well, work to ensure the operability of
18  the pump.  There were all kinds of pumps, direct
19  displacement pumps and -- and various types of
20  centrifugal pumps.  So the maintenance procedures
```

T2529

```
21  were a spectrum of -- of things from -- from
22  adjustments to piping, replacements of -- of
23  motors, and that kind of thing.
24     Q.  Okay.  Can you tell me about the
25  adjustments, you said, to the piping?
```

                                55
```
1   A.  (No audible response by the deponent.)
2   Q.  What did that involve?
3   A.  I don't recall.  The -- because of the --
4   I'm trying to relate to a specific pump or a
5   specific type of pump, and I -- I just don't
6   recall.
```

Contrary to plaintiff's assertions in his affidavit, Mr. Ruppel <u>was</u> asked about the work that he saw performed on centrifugal pumps at the A1W facility, and he did not offer any testimony regarding <u>any</u> gasket or packing work performed on these pumps.

In addition to the specific questions about centrifugal pumps, Mr. Ruppel was asked broader questions about work he saw performed on pumps generally. During his discovery deposition, Mr. Ruppel was asked about his work on pumps at the A1W facility, and failed to describe <u>any</u> work performed which would involve asbestos-containing components of any type of pumps:

```
3   During this period of time from '57 to '59, do
4   you recall supervising the installation or repair of any
5   pumps at A1W?  During this time period of '57 to '59, do
6   you recall being present for the installation or repair
7   of any pumps at A1W?
8   A.  Yes, but I don't recall the details.
9   Q.  Okay.
10  A.  We were not a -- we had pumps that operated --
11  injection pumps that operated 24 hours, and I recall
12  difficulty with those pumps, but I don't remember any
13  details.
14  Q.  Okay.  When you say you can't recall the
15  details, does that mean you can't tell me what work was
16  performed on those pumps?  You can't tell me
```

T2529

```
17  specifically what work was performed on those pumps?
18  A.  No.
19  Q.  Or who manufactured those pumps, correct?
20  A.  No.
```

See, Discovery Deposition of Henry Ruppel, Volume I, July 18, 2012, 87:3-20 attached hereto as Exhibit C.

Later, when Mr. Ruppel was asked a question about whether he recalled witnessing any repairs or maintenance on pumps in his career that he could discuss, he said that he did not:

```
12  As you sit here now, do you have a recollection
13  of witnessing repairs or maintenance to pumps that we
14  could discuss right now?
15  A.  **No**.
```

See, Discovery Deposition of Henry Ruppel, Volume II, July 19, 2012, 217:12-15 attached hereto as Exhibit D.

Indeed, in the three days of deposition testimony in this case, despite being asked repeatedly about his recollection of work on pumps, Mr. Ruppel failed to testify that he recalled being present when <u>any</u> gasket or packing work performed on <u>any</u> pump during his career, let alone a centrifugal pump. Because the affidavit clearly contradicts Mr. Ruppel's previous sworn deposition testimony, it should be stricken.

This affidavit is also inadmissible under the sham affidavit doctrine, which is recognized under Fed.R.Civ.P. 56 as a method for determining whether an affidavit or declaration raises a genuine issue of material fact for summary judgment determinations. The sham affidavit doctrine "refers to the trial courts' 'practice of disregarding an offsetting affidavit that is submitted in opposition to a motion for summary judgment when the affidavit conflicts with the affiant's prior deposition testimony.'" *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004) *citing*

*Shelcusky v. Garjulio*, 172 N.J. 185, 797 A.2d 138, 144 (N.J. 2002). Under the doctrine, "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." *Id.*; *Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991). The sham affidavit doctrine is particularly applicable when affidavits are filed after the affiant has already been deposed "to explain away or patch up an earlier deposition in an attempt to create a genuine issue of material fact." *In re Citx Corp., Inc.*, 448 F.3d 672, 679 (3d Cir. 2006). *See also Krik v. B.P. America, Inc.*, MDL 875 PA-ED, Case No. 11-CV-63473 (Document No. 327) (striking declaration under sham affidavit doctrine where declaration directly contradicted plaintiff's deposition testimony and "[p]laintiff failed to set forth any explanation for the conflicting testimony, either in his declaration or in his brief.")

Only here, at the summary judgment stage, in a desperate, last-minute attempt to create enough evidence to create a material issue of fact, has Plaintiff come forward with this affidavit regarding work on centrifugal pumps. Plaintiffs have offered no plausible explanation for the discrepancy, since Mr. Ruppel was repeatedly asked about work he saw performed on pumps at the A1W facility, and was asked <u>by his own counsel</u> what work he recalled performed on centrifugal pumps. This affidavit is nothing more than a sham affidavit, executed in a bold-faced attempt to drum up enough evidence to raise a material issue of fact and defeat summary judgment. Because the affidavit is clearly contradicted by Mr. Ruppel's deposition testimony in this case, this court should strike Plaintiff's affidavit.

### b. PLAINTIFF'S AFFIDAVIT IS UNTIMELY.

The Court accepted the Joint Report of the Parties in this matter and discovery was initially scheduled to be closed on August 9, 2013. Doc. 138-1. Plaintiff's counsel represented that Plaintiff did not need to be deposed again in Federal Court because he had previously been deposed in state court. *Id.* After a discovery dispute conference before Magistrate Judge Stephen C. Williams on July 31, 2013 discovery was extended in order to allow for the depositions of defendant's corporate representatives, defendant's experts, and plaintiff's experts to be taken prior to August 30, 2013. Doc. 320.

Plaintiffs offer Mr. Ruppel's affidavit well after the close of discovery in this case. The affidavit was signed on October 23, 2013, but was not revealed to Warren until November 27, 2013. Plaintiff answered his interrogatories, supplemented those answers, and sat for three days of deposition testimony, but waited until now to offer this new evidence. This evidence is clearly offered late, past the discovery deadline, and prejudices Warren greatly, in that Warren cannot properly cross-examine the witness on the new allegations or develop its defenses, and its experts are not allowed the opportunity to opine on the new evidence. Because the affidavit was offered late, Warren asks the court to strike the affidavit.

### III. CONCLUSION

The affidavit of Henry Ruppel should be stricken for a number of reasons. Paragraphs 7 through 11 of the affidavit offer contradictory and new testimony concerning centrifugal pumps, repairs on asbestos-containing components of this equipment, and Mr. Ruppel's alleged exposure. Further, Mr. Ruppel did not timely file his affidavit. For the reasons stated above and pursuant to Federal Rules of Civil Procedure, Federal Case Law, and what was specified in the

holding previously set out in *Hunt v. DaVita, Inc.*, No. 10-602-GPM, 2011 WL 2532845, Warren respectfully requests that this Honorable Court grant Warren's Motion to Strike the Affidavit of Henry Ruppel.

                              WARREN PUMPS, LLC, Defendant

                              BY: /s/      Michael F. Daniels
                              HEYL, ROYSTER, VOELKER & ALLEN
                              Michael F. Daniels
                              ARDC #:6203197

HEYL, ROYSTER, VOELKER & ALLEN
Suite 100, Mark Twain Plaza III
105 West Vandalia
P.O. Box 467
Edwardsville, Illinois 62025 0467
Telephone  618.656.4646
Facsimile  618.656.7940

## CERTIFICATE OF SERVICE

The undersigned certifies that on this **11th** day of **December, 2013**, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                              /s/      Michael F. Daniels
                              Michael F. Daniels