IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HENRY RUPPEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:12-cv-293-DGW-SCW |
| ) | |
| CRANE CO., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND OPINION**

**WILKERSON, Magistrate Judge:**

Now pending before the Court is the Motion for Summary Judgment filed by Defendant, Crane Company, on September 23, 2013 (Doc. 409). For the reasons set forth below, the Motion is **DENIED**.

### INTRODUCTION

Plaintiff filed his First Amended Complaint in this action in the Circuit Court of the Third Judicial Circuit in Madison County, Illinois on May 14, 2012, alleging that he sustained injuries as a result of exposure to asbestos-containing products attributable to Crane Company and various other defendants. General Electric Company subsequently removed Plaintiff's suit to this Court. Plaintiff's First Amended Complaint alleges state law claims of negligence, negligent manufacturing, and spoliation against a number of defendants, including Crane Company ("Crane"). Crane filed its Motion for Summary Judgment on September 23, 2013 (Doc. 409), asserting it is entitled to judgment as a matter of law on all counts. Plaintiff timely filed a response on November 27, 2013 (Doc. 446), after being granted an extension of time to respond. The Court notes that Crane argues for summary judgment on the claim of spoliation to which

Plaintiff indicated that the spoliation claim will be dismissed. Accordingly, the Court does not address Defendant's argument as to this claim in this Memorandum.

**FACTUAL BACKGROUND**

Plaintiff, Henry Ruppel[1], alleges he was exposed to asbestos-containing products while employed by Westinghouse Electric Corporation (*See* First Amended Complaint). Plaintiff worked for Westinghouse at the National Reactor Testing in Idaho Falls, Idaho from 1957 to 1959 on the "S1W" and "A1W" plants as a shift supervisor, where he was primarily responsible for overseeing construction of the "A1W" (Doc 409-2, Def.'s Ex. B, p. 3). Plaintiff spent approximately 50-66% of his time in the plant while supervising (Doc. 446-3, Plf.'s Ex. A-2, p. 51). During his tenure on the "S1W" and "A1W" plants, Plaintiff saw Crane valves and Pacific valves[2]; however, Plaintiff never personally worked on any Crane or Pacific valves (Doc. 409-3, Def.'s Ex. C, p. 220-221). While working at the "S1W" facility, Plaintiff observed repairs and maintenance work being done on Pacific valves (Doc. 446-2, Plf.'s Ex. A-1, p. 125-126). Further, while working at the "A1W" facility, Plaintiff worked near and around Crane and Pacific valves, as he spent significant time in each room of the "A1W" facility (Doc. 446-3, Plf.'s Ex. A-2, p. 83).

In his supervisory position, Plaintiff monitored the installation, maintenance, and repair of the valves (Doc. 446-3, Plf.'s Ex. A-2 p. 52). In particular, during Plaintiff's employ on the "A1W," he observed employees adjusting valves, replacing packing and gaskets on the valves, scraping gaskets from the valves, and insulating valves. These activities occurred approximately

---

[1] The Court notes that Plaintiff, Henry Ruppel, is deceased (*See* Document 508). However, no party has been substituted for Mr. Ruppel as of the date of the filing of this order. Accordingly, the Court refers to Mr. Ruppel as "Plaintiff" in this Memorandum and Opinion.

[2] Defendant Crane Co. concedes it is a successor to Pacific Pump, Inc. Accordingly, any liability attributable to Pacific Pump, Inc. is attributable to Crane Co.

2-3 times per month during the two years Plaintiff worked at the "A1W" facility, and created significant amounts of visible dust that Plaintiff breathed in.

Following Plaintiff's work on the "A1W", he was reassigned to the construction of the "USS Enterprise" in Newport News, Virginia (Doc. 446-3, Plf.'s Ex. A-2, p. 47). Plaintiff's tenure on the "USS Enterprise" spanned from 1959 to approximately 1961 (Doc. 446-3, Plf.'s Ex. A-2, p. 65). In this position, Plaintiff was the reactor plant supervisor and witnessed the installation of various types of equipment, including valves (Doc. 446-3, Plf.'s Ex. A-2, p. 65). Plaintiff identified both Crane and Pacific as manufacturers of at least some of the valves that were installed and otherwise maintained in his presence (Doc. 446-3, Plf.'s Ex. A-2, p. 78). With respect to installation of the valves, Plaintiff saw the insulation, testing, adjustment, and repacking of these valves (Doc. 446-3, Plf.'s Ex. A-2, p. 72). When employees were removing packing from the valves, Plaintiff noted that it caused the air to be dusty all around, implying that he breathed in the dusty air (Doc. 446-3, Plf.'s Ex. A-2, p. 74). While assigned to the "USS Enterprise," Plaintiff spent approximately two-thirds of his time aboard the ship (Doc. 446-3, Plf.'s Ex. A-2, p. 65). During this time, Plaintiff testified that the valves were being installed or otherwise being worked on approximately 50 percent of the time (Doc. 446-3, Plf.'s Ex. A-2, p. 78).

With respect to the valves manufactured and sold by Defendant Crane, they contained asbestos-containing parts (i.e. gaskets and packing materials) until the mid-1980s (Doc. 446-5, Plf.'s Ex. C, p. 8). It was apparent to Crane that these asbestos-containing parts would need to be replaced in order to keep the valves functioning properly (Doc. 446-5, Plf.'s Ex. C, p. 13). Conveniently, Crane sold replacement products, including asbestos gaskets, for its valves (Doc. 446-5, p. 9). Moreover, Crane was aware that the gaskets and packing on its valves (presumably

whether original or replacement), would bake onto the valves, which required a scraping of the gaskets in order to remove the materials (Doc. 446-6, Plf.'s Ex. D, p. 14-15).

## DISCUSSION

### *Summary Judgment Standard*

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of a nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted).

### *Government Contractor Defense*

Crane asserts that it is entitled to summary judgment because it is shielded from liability

pursuant to the government contractor defense. In *Boyle v. United Technologies Corp.*, the Supreme Court held that, under certain circumstances, government contractors are shielded from state tort liability for products manufactured for the United States' armed forces. 487 U.S. 500 (1988). In *Boyle*, the Supreme Court articulated a three-part test to determine if the government contractor defense applies. According to the *Boyle* test, Crane must demonstrate the following in order to prevail on summary judgment: (1) the United States approved reasonably precise specifications for Crane's equipment; (2) the equipment conformed to those specifications; and, (3) Crane warned the United States about the dangers in the use of equipment that were known to it, but not the United States.

Crane asserts that its valves were approved by the Navy, and supplied according to Navy specifications, because the Navy approved the design for the "USS Enterprise" (Doc. 409-4, Def.'s Ex. D, p. 3-4). Plaintiff refutes this argument, asserting that the Navy's approval of the design for the "USS Enterprise" does not fulfill the requirements of the *Boyle* test. Specifically, Plaintiff asserts that Crane failed to provide evidence of any government specifications for its valves and failed to provide evidence showing that Crane warned the United States about the danger of asbestos in its product, of which it was clearly aware.

Defendant Crane's evidence submitted in support of its motion for summary judgment is clearly deficient to meet the requirements articulated in *Boyle*. Although Crane established that the Navy developed and approved the design of the "USS Enterprise," Plaintiff correctly asserts that Crane failed to establish that the government provided any precise specifications as to Crane's valves. Moreover, Crane failed to establish that it provided the government with information on the dangers of its product. Crane also failed to mention whether the Navy developed and approved the design of the "A1W." In support of its motion, Crane relies on *Niemann v.*

*McDonnell Douglas Corp.*, wherein the Court applied the government contractor defense to shield an airplane manufacturer from liability, finding that the government's decision to use asbestos tape in the aircraft was a discretionary decision. 721 F.Supp. 1019, 1023-24 (S.D. Ill. 1989). The facts in *Niemann* are clearly distinguishable from the facts at issue here. In *Niemann*, the defendants submitted evidence that: (1) the government reviewed and approved the aircraft design at several stages prior to acceptance; (2) the government accepted the aircraft as produced; and, (3) the defendants were not aware of the dangers and risks associated with the use of asbestos at the time in question. *Id.* at 1026-28. In this case, Defendant Crane has not provided such persuasive evidence, and, as such, has not met its burden in establishing the elements of the government contractor defense. Accordingly, Defendant's Motion for Summary Judgment on the basis of the government contractor defense is **DENIED**.

*Negligence*

In arguing it is entitled to summary judgment, Crane asserts that Plaintiff has failed to establish causation – a necessary element of his negligent claim. It is clear that, in order to prevail on a negligence claim in an asbestos case such as this, the plaintiff must establish that the defendant's asbestos was a "cause" of the plaintiff's injuries. *Thacker v. UNR Industries, Inc.*, 603 N.E.2d 449, 455 (Ill. 1992). Illinois courts have, as a matter of law, refused to allow a plaintiff to take the causation question to the jury when there is insufficient evidence for the jury to reasonably find that the defendant's conduct was a cause of the plaintiff's harm or injury. *Id.* In cases such as this, plaintiffs often rely heavily on circumstantial evidence in order to show causation. *Id.* at 456. In *Thacker*, the Supreme Court of Illinois articulated what is understood to be the "frequency, regularity and proximity test." As prescribed by this test, in order to have the question of legal causation submitted to the jury, the plaintiff must show (1) he regularly worked in

an area where the defendant's asbestos was frequently used, and (2) the plaintiff did, in fact, work sufficiently close to an area where the defendant's asbestos was used, so as to come into contact with the defendant's product. *Id.* at 457. A plaintiff cannot present his case to the jury unless there is sufficient evidence for the jury to conclude the defendant's conduct was a cause of the injury. *Johnson v. Owens-Corning Fiberglass Corp.*, 672 N.E.2d 885, 890 (Ill. App. Ct. 1996). Moreover, a plaintiff must prove more than just minimal contact with a defendant's asbestos product. *Id.*

In *Thacker*, the Court concluded that the plaintiff satisfied her burden of establishing causation in an asbestos personal injury action similar to this. In its analysis, the Supreme Court of Illinois relied on its "frequency, regularity and proximity test." *Thacker*, 603 N.E.2d at 457-58. The Court found that the plaintiff satisfied the "frequency" and "regularity" prongs of this test by establishing that, during the eight years the decedent worked at the facility at issue, approximately three percent of the total dust in the plant was attributable to the defendant. *Id.* at 459. Moreover, the Court determined that the plaintiff satisfied the "proximity" element of this test by establishing that no matter where in the plant the defendant's asbestos was processed, due to "fiber drift," once inside the plant, the defendant's asbestos necessarily contributed to the dust in the plant air. *Id.* The Court in *Thacker* made this finding although the plaintiff had not shown that he specifically handled any asbestos-product of the defendant. *Id.* at 453.

The Court finds the reasoning in *Thacker* instructive in this case. Although Defendant contends that Plaintiff admits valve work was done infrequently, and there is no evidence that Plaintiff was either exposed to any of the original components manufactured or supplied by Crane or never personally worked on Crane valves, there appears to be evidence to the contrary. Plaintiff has provided at least some evidence establishing both "frequency and regularity" as well

as "proximity" to the Defendant's asbestos-containing product.  In his depositions, Plaintiff specifically indicated that he observed repairs and maintenance work being done on Pacific valves in the "S1W" facility.  Moreover, with respect to his contact and experience with Crane and Pacific valves at the "A1W" facility, Plaintiff specifically identified seeing Crane valves, and mentioned that the bulk of the small valves were Pacific valves.  According to Plaintiff's testimony, he oversaw employees packing, gasketing, installing, testing, maintaining, and scraping the gaskets on these valves.  Furthermore, Plaintiff testified that he witnessed the valves being maintained or otherwise worked on approximately two or three times per month for the two years he worked at the "A1W" facility.   With respect to Plaintiff's tenure on the "USS Enterprise," he supervised employees repacking and otherwise working on Crane and Pacific valves regularly — approximately 50 percent of his time aboard the ship.

Plaintiff's testimony with respect to Defendant Crane's valves establishes more than just minimal contact.  For approximately four years, Plaintiff regularly witnessed the maintenance, repair, and installation of these valves.  Accordingly, Plaintiff has submitted evidence sufficient to establish "frequency and regularity" of his exposure to Defendant's product.  Moreover, the "proximity" prong may be met, as Plaintiff has offered some evidence that he was regularly in the vicinity, and breathing in the dust associated with maintaining, repacking, and repairing Defendant's valves.  Accordingly, Defendant Crane's motion for summary judgment as to Plaintiff's negligence claim is **DENIED.**

### *Negligent Manufacture and Marketing*

Defendant Crane further asserts that it is entitled to judgment as a matter of law on Plaintiff's negligent manufacturing claim.  Defendant relies primarily on the component part doctrine, asserting that Crane bears no liability for parts later affixed to its valves because it did not

design the systems into which its valves were incorporated. As such, Crane provides that it bears no liability for the component parts (i.e. gaskets and packing) that it did not manufacture, distribute, or sell.

Illinois law is clear that a manufacturer of a component part will not be held liable for injuries resulting from a dangerous condition created by the party who created the final product. *Woods v. Graham Engineering Corp.*, 539 N.E.2d 316, 319 (Ill. App. Ct. 1989). However, this protection from liability does not necessarily extend to components that are themselves inherently dangerous or defective. *See Pasquale v. Speed Products Engineering*, 654 N.E.2d 1365, 1374 (Ill. 1995). Specifically, the manufacturer of a component part may be held liable where the assembler made no substantial change in the component part and the injury is directly attributable to a defect in such component part. *Thomas v. Kaiser Agr. Chemicals*, 407 N.E.2d 32, 37 (Ill. 1980) (citing *Suvada v. White Motor Co.*, 210 N.E.2d 182 (Ill. 1965). Moreover, Illinois law holds manufacturers liable for injuries resulting from reasonable foreseeable post-sale alterations to its product. *Perez v. Sunbelt Rentals, Inc.*, 968 N.E.2d 1082 (Ill. App. Ct. 2012).

In this case, Plaintiff has produced evidence tending to show that the valves manufactured by Crane were inherently dangerous as manufactured. Specifically, Plaintiff has established that Crane manufactured its valves with asbestos-containing material (i.e. packing and gaskets). Moreover, Crane knew that its valves would require maintenance, involving repacking and necessitating replacing the gaskets. Accordingly, Crane knew that end users would have to replace the original valve's asbestos-containing materials with new materials, which were also likely to contain asbestos. Crane understood that replacing the packing and gaskets would necessarily involve scraping off the old gaskets, which would create a significant amount of asbestos-containing dust. Accordingly, although Crane may be a component manufacturer, the

valves it manufactured presented an inherent danger to users. As such, Crane's motion for summary judgment on Plaintiff's negligent manufacturing claim is **DENIED.**

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendant Crane (Doc. 409) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: September 30, 2014**

              **DONALD G. WILKERSON**
              **United States Magistrate Judge**